UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-------------------------------------------------------
CAROL WHYTE et. al.,

                    Plaintiffs,

        -against-

NASSAU HEALTH CARE CORPORATION
and RITA BERNHARDT, in her official and
individual capacity,

                    Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**
08-CV-2399(DRH)(GRB)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Blvd.
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.

**For the Defendants:**
**CLIFTON BUDD & DeMARIA, LLP**
420 Lexington Avenue
New York, New York 10170
By:    Sheryl Ann Orwel, Esq.

**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
By:    Brian J. Clark, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff  Carol Whyte ("Whyte" or "plaintiff") commenced this action against

defendants Nassau Health Care Corporation ("NHCC") and R i t a  B e r n h a r d t

("B e r n h a r d t")(collectively "defendants") asserting claims of race-based and national-

origin-based discrimination and retaliatory employment practices in violation of 42 U.S.C.

1

§ 2000(e) (Title VII), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and New York's Human Rights Law, Executive Law § 296. (Sec. Am. Compl. ¶ 1, as Defs.' Ex. A). Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth below, the defendants' motion is granted.

### BACKGROUND

The following facts, drawn from the parties' local Rule 56.1 statements, the pleadings, and prior decisions in this case, are undisputed unless otherwise noted.

*Procedural History*

In an Order dated June 13, 2008, this Court, adopting Magistrate Judge Orenstein's Report and Recommendation in its entirety, granted defendants' motion pursuant to Federal Rule of Civil Procedure 21 to sever into separate actions the claims of seven plaintiffs, including Leacock, each of whom claimed that defendants had discriminated against him or her based on race. (*See* 06-CV-4757, Docket No. 64 (Memorandum and Order, dated June 13, 2008)). In the same opinion, the Court also dismissed plaintiffs' Title VI claims in their entirety and their Title VII claims against all of the individual defendants, including defendant Bernhardt. (*Id.* at 14-15.)

*Plaintiff's Employment at NUMC*

Plaintiff, a black woman of Jamaican National Origin, "began working in the position of Medical Technologist I in the hematology Department of the Laboratory [at Nassau University Medical Center ("NUMC")] on or about May 19, 2003." (Defs.' R. 56.1 Stmt. ¶ 7; Sec. Am. Compl. ¶ 40.) Medical Technologist I is a "competitive position and Ms. Whyte took a Civil Service examination in order to qualify for the position." (Defs.' R. 56.1 Stmt. ¶ 7.)

While defendants contend that Whyte had no hematology experience prior to her hiring by NHCC, they do concede that "from 1996-1998, [plaintiff] worked at the New York City clinical lab where she took urine samples and did alcohol testing on sanitation workers." (*Id.* ¶ 11.) Whyte asserts that her work at the New York City clinical lab constituted "hematology and urinalysis experience," and that "the only experience she did not have was in chemistry." (Pl.'s R. 56.1 Stmt. ¶ 11.)

At the start of her employment, Whyte "was subject to a 26-week probationary period, to conclude on November 16, 2003 . . . imposed by the Nassau County Civil Service Commission, pursuant to the New York State Civil Service Law, to ensure that the conduct, capacity, and fitness of the individual hired for the position was satisfactory." (Defs.' R. 56.1 Stmt. ¶ 8.) In addition, "[s]o that the probationary employees [could] have sufficient feedback during the . . . period, they [were] provided a two-month and four-month review." (*Id.* ¶ 26.) During the probationary period, "new employees like Whyte were rotated through the different areas in which they would be working, i.e., Coagulation, Urinalysis, CBC, and slide areas." (*Id.* ¶ 21.) Whyte, like other Medical Technologists, "started on the day shift" and "in the coagulation and urinalysis areas since they were easier than the other areas and had less need for use of the department computer." (*Id.* ¶ 22.)

Defendant Bernhardt was Whyte's "direct supervisor in the hematology lab." (*Id.* ¶ 10.) "She supervised the day shift from 8:00 a.m. to 4:00 p.m. and [had] some responsibilities for the evening shift, 4:00 p.m. to 12 midnight. Her duties include[d] quality control, quality assurance and reviewing the Medical Technician's work in the Hematology Lab." (*Id.* ¶ 6.)

In addition to Bernhardt, Kathleen Martinez-Walsh, a Medical Technician III, supervised both the hematology and chemical laboratories at NUMC. (*Id.* ¶ 9.) "Martinez-Walsh gave

plaintiff her two-month review in or about July 21, 2003," finding that Whyte "[did] not meet standards in terms of knowledge, skills and abilities when performing technical work in the field," had "little if any knowledge in the coagulation and urinalysis areas," was "slow to catch on" and "repeatedly [had to] be shown the same procedures." (*Id.* ¶ 27.) Though plaintiff claims that she improved after four months, Martinez-Walsh concluded in her four-month review that plaintiff still did not meet the standard for Medical Technologist I. (Pl.'s R. 56.1 Stmt. ¶ 30; Defs.' R. 56.1 Stmt. ¶ 30.)

As a result, Martinez-Walsh asked Bernhardt to monitor Whyte's work closely. (Defs.' R. 56.1 Stmt. ¶ 31.) In addition, "Martinez-Walsh also directed Ms. Bernhardt to develop a test for Ms. Whyte," the purpose of which is disputed. (*Id.* ¶ 32.) While defendants claim that the purpose of the test "was to determine whether [plaintiff] had the basic knowledge and skills regarding hematology or whether she was having trouble operating the machine in the laboratory," (*id.* ¶ 32), plaintiff states that the point of the test "was to humiliate Plaintiff and to force her not to pass her probationary period." (Pl.'s R. 56.1 Stmt. ¶ 32.) In any event, according to defendants, the test results made it "clear to Martinez-Walsh that [plaintiff] did not have the most basic knowledge required for the position of Medical Technologist I." (Defs.' R. 56.1 Stmt. ¶ 32.)

In general, plaintiff does not dispute that defendant "Bernhardt reviewed Whyte's work in coagulation and found multiple errors including incorrect commenting and incorrect running of specimens," (*id.* ¶ 24), but she claims that Bernhardt "screamed at her and belittled her in front of other employees" because of these mistakes. (Pl.'s R. 56.1 Stmt. ¶ 24.) For example, Whyte admits that about four months into the probationary period there was an incident where "she used the wrong reagent to test the specimen" and "made a mistake in running the test." (Defs.' R. 56.1

Stmt. ¶ 39.)  Bernhardt admits "to yelling at Whyte on this occasion because Whyte released improper results from the lab to a doctor and the doctor may have been relying on it to the patient's detriment." (*Id*.)  On a separate occasion, "Whyte challenged the [department's] finding that she had made the same mistake twice in the same day," and "when confronted with the computer print out showing the mistake the second time," Whyte suggested that "someone else must have signed into the computer under her name and made the same mistake." (*Id*. ¶ 41.)

"Toward the end of her probationary period, Ms. Whyte was rotated into the chemistry department in the laboratory under the direct supervision of Lisa Crispino." (*Id*. ¶ 33.)  Ms. Crispino completed an evaluation of plaintiff and "also found Ms. Whyte's performance unsatisfactory," (*id*. ¶ 33), although the plaintiff claims that this evaluation "was not a true and accurate statement of Plaintiff's work." (Pl.'s R. 56.1 Stmt. ¶ 33.)

Two weeks prior to the end of plaintiff's probationary period, NHCC completed a report required by the Nassau County Civil Service Commission on the suitability of the plaintiff for continued employment. (Defs.' R. 56.1 Stmt. ¶ 34.)  NHCC gave Whyte an "unsatisfactory rating" and "on October 28, 2003, NHCC wrote to . . . Whyte and advised her that her employment would be terminated effective November 11, 2003. (*Id*. ¶¶ 35-36.)

*Complaint to the Office of Diversity*

According to the plaintiff, on or about November 4, 2003, she "consulted with the Office of Diversity to report the discriminatory acts that she was being subject[ed] to." (Pl.'s R. 56.1 Stmt., Counterstatement of Facts ("Pl.'s Counterstatement") ¶ 30.)  "Although Plaintiff visited the office during her lunch break," the meeting ran past the end of her break. (*Id*. ¶ 30.)  When plaintiff returned from the meeting, Martinez-Walsh told her that she was not supposed to go to the Office of Diversity on the department time and "that she would be docked for the extra time

that she spent at the Office." (*Id.* ¶ 31; Whyte Dep. at 129.) While reviewing her last paycheck, plaintiff noticed that it was less than her previous paychecks and notified the Human Resources Department. (Pl.'s Counterstatement ¶ 31.) Although the Human Resources Department notified plaintiff that they would rectify the discrepancy, plaintiff never received the additional compensation. (*Id.*)

*Cecile Gonzales*

"Whyte alleges that she received less favorable treatment than a Filipino probationary employee named Cecile Gonzales," a Medical Technologist I who was hired shortly after Whyte. (Defs.' R. 56.1 Stmt. ¶¶ 20, 42.) Gonzales, however, had worked "as a medical technologist in the hematology lab at New York Hospital" for more than a year immediately prior to her hire at NUMC. (*Id.* ¶ 20.) In addition, Gonzales "also had worked for more than six years as a medical technologist in hematology at hospitals in the Philippines." (*Id.*) It is undisputed that "Gonzales was laid off in December 2003, the month following Whyte's termination." (*Id.* ¶ 44.)

## DISCUSSION

### I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No

genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts,*" Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)),  and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an

absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Id*. at 211 (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. Plaintiff's Discrimination Claim

### A. *Legal Standard*

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar "burden-

shifting "formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under McDonnell Douglas and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097,147 L. Ed. 2d 105 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient to establish a question of fact as to the credibility of the employer's reasons."

*Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII." *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim")). "[A]ccordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.*

**B. *Application to Plaintiff's Discrimination Claim***

As described above, the Court begins its analysis by determining whether or not the

plaintiff has made out a *prima facie* case. The defendant[1] does not contest that the plaintiff, who is African American and Jamaican, is a member of a protected group. (Defs.' Mem. in Supp. of Summ. J. at 17.) Defendant, however, asserts that plaintiff does not meet any other elements of her claim of discrimination. (*Id.*)

*Plaintiff's Qualification*

The parties disagree as to whether plaintiff was qualified to perform her job. In order to make out a *prima facie* case that plaintiff is qualified, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer."[2] *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2001). As the Second Circuit cautions, "[t]he qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Id.* "[E]specially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw. *Id.* Still, "there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render her unqualified for continued employment and thereby defeat her *prima facie* case." *Gregory v. Daly*, 243 F.3d 687, 697 n. 7

---

[1] Since the only remaining defendant subject to plaintiff's Title VII claims is NHCC, the use of "defendant" in Parts II and III of this opinion refers to NHCC.

[2] In *Slattery v. Swiss Reinsurance America Corp.*, the Second Circuit clarified that standard for the qualification prong previously addressed in *Thornley v. Penton Publishing*, 104 F.3d 26, 29 (2d Cir. 1997), which acknowledge that "[the Second Circuit] ha[s] occasionally analyzed this element in terms of whether plaintiff shows 'satisfactory job performance' at the time of the discharge." *Slattery*, without mentioning *Thornley*, restated the standard noting, a "mere variation in terminology between 'qualified for the position' and 'performing . . . satisfactorily' would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." 248 F.3d at 91-92.

(2d Cir. 2001) (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).  Plaintiff's performance here is likely an example of those circumstances.

Here, plaintiff does not dispute that Bernhardt "found multiple errors" in reviewing plaintiff's work in the hematology lab.  (Defs.' R. 56.1 Stmt. ¶ 24.)  She also admits that on or about August 15, 2003, she "performed a series of Glucose-6-PD . . . tests incorrectly by eliminating a crucial step to the test and [as a result] sent inaccurate test results to the patient's treating physicians."  (*Id*. ¶ 40.)  In addition, in her deposition testimony Whyte admitted to "miss[ing] critical results."  (Dep. of Carol Whyte ("Whyte Dep.") at 75-76.)  The plaintiff disputes only the accusation that she made two mistakes in one day, claiming that a different person signed into the computer under her name and made the second mistake.  (Whyte Dep. at 61.)  Given plaintiff's numerous admitted mistakes, however, even if plaintiff did not make the second mistake, a reasonable jury could not find that plaintiff was qualified for her position.

Plaintiff's arguments to the contrary fail to undermine the finding that she was unqualified.  Plaintiff's main challenge to her negative reviews is that she was in training.  (Pl.'s Mem. in Opp. to Summ. J. at 4.)  In addition, plaintiff argues that she should be excused because "she had very little experience in chemistry and very specific experience in the areas of hematology and urinalysis."  (*Id*.)  These arguments, however, are merely "rationalizations for [her] deficiencies rather than demonstrations of any genuine issue of material fact to be tried." *McLee*, 109 F.3d at 135.  Furthermore, her excuses, "even if true, in fact confirm[ ] the validity of the . . . criticisms [of her work.] *Id*.  Therefore, plaintiff cannot make out a *prima facie* case as to her qualifications.

*Inference of Discrimination*

Even if, however, a genuine issue of fact as to plaintiff's qualifications existed, the

plaintiff cannot demonstrate that she suffered adverse employment action under circumstances giving rise to an inference of discrimination. Plaintiff alleges that "racial discrimination led to: 1) Ms. Whyte not receiving adequate training for her position; 2) deprivation of material responsibilities; 3) termination as a result of denial of training; and 4) ultimately, the inability to be promoted to a permanent position, crippling future career advancement opportunities." (Pl.'s Mem. in Opp. to Summ. J. at 6.) The plaintiff claims that she can establish NHCC's discriminatory intent behind these actions by demonstrating that the defendant engaged in "disparate treatment on the basis of race." (Pl.'s Mem. in Opp. to Summ. J. at 8.)

Under a disparate treatment theory, a plaintiff can raise an inference of discrimination "by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). When considering whether a plaintiff has shown that she was subjected to disparate treatment, the Second Circuit requires that the plaintiff demonstrate that she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself. *Id.*

In particular, plaintiff claims that she was treated differently than similarly situated Filipino and Indian employees in her department, whom she neglects to name or describe. (Pl.'s Mem. in Opp. to Summ. J. at 8.) Moreover, Whyte fails to offer any evidence concerning the circumstances of these other employees other than that they worked in the same department. These conclusory allegations of discriminatory intent are not sufficient to make out the required *prima facie* case. *See Guerrero v. Fire Dep't, City of N.Y.*, 2009 WL 1563532, at *9 (S.D.N.Y. June 2, 2009) (finding that plaintiff's evidence of unlawful

termination insufficient because "[c]onclusory allegations of discrimination, without more" do not meet the requirements under Rule 56(e) in order to defeat a summary judgment motion).

The only specific employee that Whyte seeks to compare herself to is Cecile Gonzales, a "Filipino female, [who] was hired in the same position and department." (Pl.'s Mem. in Opp. at 9.)  Plaintiff claims that Bernhardt "provided Gonzalez with her own personal supervisor to receive adequate one-on-one assistance," but did not afford the same benefits to plaintiff.  (*Id.* at 9.)  Plaintiff, however, provides no evidence to suggest that Gonzales was similarly situated to her in all material respects.  In fact, Gonzales's significant amount of experience in hematology differentiates her from the plaintiff who admittedly had "very little experience in chemistry and very specific experience in the areas of hematology and urinalysis," (*id.* at 4), such that the two are not similarly situated.  *See Loucar v. Boston Market Corp.*, 294 F. Supp. 2d 472, 479 (2003) (finding that plaintiff was not similarly situated to employee who had five years of experience).  Furthermore, there is no evidence that both Whyte and Gonzales were similarly situated in terms of their performance.  In fact, while Whyte admitted to making multiple mistakes and receiving substandard reviews, it is undisputed that Gonzales "was considered performing up to standards" on her only review.[3] (Defs.' Reply Mem. at 6; Aff. of Kathleen Martinez-Walsh, Ex. H, Evaluation of Cecile Gonzales.)  As a result, the material differences between plaintiff's and Gonzales' experience and performance defeat plaintiff's disparate treatment theory.

Whyte also alleges that she can demonstrate disparate treatment "through evidence of a hostile work environment."  (Pl.'s Mem. in Opp. at 10.)  In order to establish a hostile work

---

[3] Gonzales did not receive any more reviews because she was laid off in December 2003 before further reviews could take place.  (Defs.' R. 56.1 Stmt. ¶ 44.)

environment claim, a plaintiff must prove: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and brackets omitted). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Cosstello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 501 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret*, 451 F.3d at 149 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)). However, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment," and instead, courts are to "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379. What is necessary is that plaintiff establish a link between the actions by defendants and plaintiff's membership in a protected class. *Id*. at 374; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Plaintiff identifies five reasons that she claims would permit a reasonable juror to find that defendant subjected her to a hostile work environment because of her race. Whyte claims:

15

1) she was "the only employee in [her department] to be publicly humiliated and yelled at by her supervisor, Defendant Bernhardt"; 2) she was "the only employee in [her department] required to take a make-shift exam"; 3)she was "the only employee to come into work everyday, only to be isolated and essentially stand idly in a corner because she was not assigned to a specific area"; 4) she was the only employee to receive inadequate training, with no direct supervision in between evaluations so that she might be given a chance to improve her alleged performance issues"; and 5) she "suffered belittling comments from her co-workers, who would often humiliate her, belittle her experience, or ignore her – following the example set forth by Defendant Bernhardt." (Pl.'s Mem. in Opp. to Summ. J. at 11.)

As an initial matter, comments from plaintiff's co-workers, who had no supervisory authority over the plaintiff, cannot be imputed on the defendant. *See Mack*, 326 F.3d at 123; *see also Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 359 (S.D.N.Y. 2006) ("Plaintiff must also show there is some reason to impute the discriminatory . . . work environment to the employer. Employers are not generally liable for the harassing behavior of a plaintiff's co-workers; to find an employer liable for a hostile work environment claim, the harassment must generally come from a supervisor with immediate or successively higher authority over a Plaintiff." (citation omitted)). As a result, co-workers' alleged comments and actions do not provide any evidence in favor of finding a hostile work environment.

Furthermore, plaintiff seems to ignore the requirement that the plaintiff establish a link between the defendant's allegedly hostile actions and the plaintiff's race or national origin. *Brown*, 257 F.3d 246; *Alfano*, 294 F.3d at 378 (holding that in order to make out a hostile work environment claim, plaintiff must provide evidence indicating that the defendant's actions were motivated by discrimination). All of the defendant's alleged hostile actions, including isolated

incidents where plaintiff's boss yelled at her and administered an exam testing plaintiff's capabilities, are facially neutral. While facially neutral circumstances may be considered as part of the totality of the circumstances, a plaintiff must provide some basis from which a jury could rationally infer that these race-neutral and national-origin neutral actions were discriminatory. *See Alfano*, 294 F.3d at 374. Here, plaintiff has offered no evidence demonstrating that any of defendant's actions were based on race or national origin other than her conclusory assertion that she was "the only African American Medical Technologist of Jamaican origin." (Pl.'s Mem. in Opp. to Summ. J. at 10.) This assertion alone, however, is insufficient. *See DeFina v. Meenan Oil Co., Inc.*, 2013 WL 596622, at * 15 (E.D.N.Y. Feb. 15, 2013) ("Plaintiff has simply not shown – through evidence of [race] related comments or actions, through evidence of other similarly situated co-workers who were not subjected to the same conduct, or through any other evidence – how the alleged conduct was discriminatory based on plaintiff's [race].").

As a result, Plaintiff's reliance on *Feingold* is unconvincing because in that case the plaintiff presented sufficient evidence that "harassment [on the basis of religion] amounted to a hostile work environment." 366 F.3d at 149. There, plaintiff demonstrated that he "experienced pervasive discriminatory intimidation, ridicule, and insult because he was Jewish," by providing evidence of defendant's anti-Semitic remarks and practice of singling out plaintiff on an almost daily basis on account of his religion. *Id.* at 150. In contrast, plaintiff has not put forward any evidence that defendant's allegedly hostile actions were based on plaintiff's race.

For the reasons stated above, plaintiff has failed to establish the final element of her *prima faci*e case in that she has not presented sufficient evidence that any alleged adverse

employment actions occurred under circumstances giving rise to an inference of discriminatory intent. Since plaintiff has failed to satisfy her burden of establishing a *prima facie* case, this Court will not shift the burden over to the employer to offer a legitimate, non-discriminatory reason for its actions. *See Patterson*, 375 F.3d at 221 ("Once the plaintiff satisfies his initial minimal burden, the burden of production shifts to the employer") (internal quotation marks omitted). Therefore, the Court dismisses plaintiff's Title VII discrimination claims.

## III. Plaintiff's Retaliation Claim

### A. *Legal Standard*

"Section 704(a) of Title VII makes it unlawful to retaliate against an employee, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)). "In order to present a prima facie case of retaliation under Title VII . . . a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII, . . . [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted). In addition, the Supreme Court recently clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in

the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234,

*16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141. Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery*, 248 F.3d at 94-95.

**B.** *Application to Plaintiff's Retaliation Claim*

Plaintiff claims that "as a result of Ms. Whyte making a complaint with the Office of Diversity, she suffered a direct harm of verbal intimidation and decrease in compensation." (Pl.'s Mem. in Opp. to Summ. J. at 15.) Defendant does not seem to dispute that Whyte engaged in protected activity in complaining to the Office of Diversity and that defendant was aware of this activity. Therefore, the central question here is whether Whyte's complaint to the Office of Diversity was a but for cause of defendant NHCC's alleged adverse employment actions.

What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related retaliatory acts and harm."); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law") (internal citations omitted). The applicable test in the retaliation context is that a "plaintiff must show

that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted).

Here, plaintiff's retaliation claim is deficient. Plaintiff offers no evidence that her pay was deducted other than her own conclusory assertions in her declaration and at her deposition. (Whyte Decl. ¶¶ 22-24; Whyte Dep. at 128-30.) Even if these statements could raise a genuine issue of fact as to whether a reasonable worker whose pay had been docked would be dissuaded from making a discrimination claim, plaintiff has not presented any evidence that defendant's proffered reason for the alleged pay docking, namely that plaintiff had gone to the Office of Diversity during work hours, was in fact pretextual. Plaintiff does not offer any evidence verifying that a deduction was made, let alone that it was made improperly. Furthermore, the mere fact that the plaintiff's alleged deduction in pay may have taken place in close temporal proximity to her visit to the Office of Diversity is not sufficient evidence of pretext. (*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). As a result, plaintiff's retaliation claim must fail. [4]

**IV. Plaintiff's 42 U.S.C. § 1981 Claims**

42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States

---

[4] Because the plaintiff cannot establish a retaliation claim, the Court need not reach defendant's argument that plaintiff's retaliation claim must fail because she "did not claim retaliation in her EEOC charge." (Defs.' Reply Mem. at 10) (citing *Chinn v. City University of New York Law School*, 963 F. Supp. 218, 223 (E.D.N.Y. 1997)).

shall have the right "to make and enforce contracts." This section prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson*, 375 F.3d at 224 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)). As defendants concede, "[t]he Courts apply the same legal elements and burden-shifting analysis for a Title VII race discrimination claim as they do for a race-based employment discrimination claim under 42 U.S.C. § 1981." (Pl.'s Mem. in Opp. of Summ. J. at 16.) As a result, since plaintiff has not provided sufficient evidence to meet even the minimal burden of establishing a *prima facie* claim of discrimination under Title VII, her claims under § 1981 must fail as well. *See Johnson c. Cty. Of Nassau*, 480 F. Supp. 2d 581, 605 (E.D.N.Y. 2007) (quoting *Patterson*, 375 F.3d at 225) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.")

Similarly, retaliation claims under § 1981 are generally analyzed in the same manner as under Title VII. *Acosta v. City of New York*, 2012 WL 1506954 at *8 (S.D.N.Y. Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability."). Since this Court has dismissed plaintiff's retaliation claim, her § 1981 retaliation claim is also dismissed.

## V. Plaintiff's 42 U.S.C. § 1983 Claims

Count IV of the plaintiff's complaint alleges that defendants "deprived Plaintiff Whyte

of her rights . . . secured by the First Amendment, Fourteenth Amendment and other laws in violation of 42 U.S.C. § 1983." (Sec. Am. Compl. ¶ 99, as Defs.' Ex. A.) Plaintiff, however, makes no mention of her First Amendment claim in her brief and fails to allege any way that the defendants infringed on her First Amendment rights. Any claims of First Amendment violations are, therefore, dismissed.

In terms of how the Court should analyze plaintiff's Equal Protection claim as compared to its Title VII claim, the plaintiff concedes that [t]he elements of one are generally the same as the elements of the other and the two must stand or fall together." (Pl.'s Mem. in Opp. to Summ. J. at 23 (citing *Feingold*, 366 F.3d at 159).) Here, since plaintiff's Title VII claims have fallen, her Equal Protection claim must fall as well.

In addition, to the extent plaintiff's § 1983 claim is predicated on a violation of the Due Process Clause of the Fourteenth Amendment, her claim is dismissed as there is no evidence that plaintiff, who was a probationary employee, (Defs.' R. 56.1 Stmt. ¶ 52; Pl.'s Opp. to Defs.,' R. 56.1 Stmt. ¶ 52), was deprived of a property or liberty interest.[5] *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) ("To state a Section 1983 claim [premised upon a due process violation], a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process.).

---

[5] Plaintiff claims that as a probationary employee she has articulable protected interests in "(1) a right to a non-discriminatory probationary period free from retaliatory treatment and harassment; and (2) a right not to have her probationary period terminated, based on any bad faith, constitutionally impermissible reason, or in violation of statutory law." (Pl.'s Mem. in Opp. at 15.) As this opinion has already addressed, however, plaintiff has not been deprived of an interest in (1) or (2).

***CONCLUSION***

For the foregoing reasons, defendant's' motion for summary judgment pursuant to Rule 56 is granted in its entirety. Plaintiff's claims under 42 U.S.C. § 2000(e) et. seq. (Title VII), 42 U.S.C. §§ 1981 and 1983, and New York's Human Rights Law, Executive Law § 296 are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York

      August 27, 2013

_____/s/_____

Denis R. Hurley
United States District Judge